UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-23469-GAYLES/OTAZO-REYES

**GEORGE VILA, P.A.,**

    **Plaintiff,**

v.

**SECRETARIA DE CULTURA F/K/A
CONSEJO NACIONAL PARA LA
CULTURA Y LAS ARTES, et al.,**

    **Defendants.**    /

## AMENDED ORDER[1]

**THIS CAUSE** comes before the Court on Defendants' Motion to Dismiss Third Amended Complaint [ECF No. 28] ("Motion"). The Court has reviewed the briefing, the record in this case, and the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

**I.    BACKGROUND**

Plaintiff George Vila, P.A. ("Plaintiff") is the part-owner and bailee of eleven works of art allegedly produced by renowned Mexican artist, Frida Kahlo. Plaintiff brings this suit against four undisputed agencies of the Mexican government—Secretaria de Cultura (formerly known as Consejo Nacional Para la Cultura y las Artes), Direccion General del Instituto Nacional de Bellas Artes, Coordinacion de Artes Visuales del Instituto Nacional de Bellas Artes, and Dirrecion de Asuntos Juridicos del Instituto Nacional de Bellas Artes—and against Fideicomiso Diego Rivera (the Banco De México Diego Rivera Frida Kahlo Museums Trust), of which the Central Bank of

---

[1] This Amended Order corrects only scrivener's errors in the Court's February 28 Order [ECF No. 42]. No substantive changes have been made.

Mexico is the designated trustee. Plaintiff primarily seeks to compel these entities to authenticate the works in Plaintiff's possession.

Plaintiff alleges that pursuant to Mexican law, the Instituto Nacional de Bellas Artes ("INBA") is "the only authority in Mexico authorized to determine if a work of art is authentic." [ECF No. 27, ¶ 51]. In 2013 and 2014, Plaintiff engaged in a series of correspondence with INBA, seeking to have the agency certify the authenticity of the works in its possession. [*Id.* ¶¶ 52–59]. Plaintiff alleges that INBA continually required more information and never completed the authentication process. [*Id.* ¶¶ 52–59].

Plaintiff's Third Amended Complaint lodges nineteen (19) claims against these various entities, seeking declaratory and injunctive relief, as well as damages for business torts. In Counts I and II, Plaintiff seeks a declaration that "Defendants have a legal obligation to proceed in their authentication process with regard to the subject (11) eleven Frida Kahlo works of art." [*Id.* ¶¶ 65, 71]. In Count III, Plaintiff seeks an injunction "compelling the Defendants to expeditiously engage in and complete the authentication process" with respect to these works. [*Id.* ¶ 74]. And each of the remaining counts seeks damages for various theories of liability stemming from the Defendants' "failing to certify the authenticity of Plaintiff's Frida Kahlo paintings." [*See, e.g.*, *id.* ¶¶ 76, 80, 83].

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted). A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) of the

Federal Rules of Civil Procedure may present either a facial or a factual challenge to jurisdiction. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial challenge, a court is required only to determine if the plaintiff has "sufficiently alleged a basis of subject matter jurisdiction." *Id.* at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Furthermore, "the court must consider the allegations in the plaintiff's complaint as true." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).[2] By contrast, a factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence*, 919 F.2d at 1529). In a factual attack, "no presumptive truthfulness attaches to [a] plaintiff's allegations," *Lawrence*, 919 F.2d at 1529 (quoting *Williamson*, 645 F.2d at 413), and the plaintiff bears the burden to prove the facts sufficient to establish subject matter jurisdiction. *See OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

Here, Defendants have advanced a factual challenge because they contend that this Court lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act. *See, e.g.*, *Araya-Solorzano v. Gov't of Republic of Nicar.*, 562 F. App'x 901 (11th Cir. 2014) (per curiam) (affirming a district court's dismissal for lack of subject matter jurisdiction pursuant to the FSIA where the district court had considered matters outside the pleadings and noting that such considerations are appropriate where there is a factual challenge to jurisdiction).

### III. DISCUSSION

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq.*, "provides the sole basis for obtaining subject matter jurisdiction over a foreign sovereign in the United States." *Guevara v. Republic of Peru* (*Guevara II*), 608 F.3d 1297, 1305 (11th Cir. 2010) (quot-

---

[2] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

ing *Guevara v. Republic of Peru* (*Guevara I*), 468 F.3d 1289, 1294 (11th Cir. 2006)). Pursuant to the FSIA, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607" of Title 28. *See* 28 U.S.C. § 1604.

As a preliminary matter, Plaintiff disputes that the Banco De México Diego Rivera Frida Kahlo Museums Trust—a private trust over which the Bank of Mexico serves as trustee—constitutes a "foreign state" for the purposes of the FSIA. Plaintiff's argument is without merit. Under the Act, a "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." *Id.* § 1603(a). And "agency or instrumentality" includes any entity that is "an organ of a foreign state" or controlled by that state—that is, state-owned or controlled corporations. *Id.* § 1603(b)(2). It is undisputed that the Mexican public writ large is the beneficiary of the trust and the trustee, the Central Bank of Mexico, is an agency or instrumentality of Mexico. The real party in interest to this dispute is the trustee, the Central Bank of Mexico. *See* FED. R. CIV. P. 17(a)(1)(E). And the injunction sought here would compel action only on the part of agencies or instrumentalities of Mexico. Thus, the FSIA applies to the state-controlled and state-administered trust.

The question then is whether this suit is nevertheless authorized under the FSIA. The FSIA's broad grant of immunity is limited by a number of narrow exceptions, two of which are relevant here: the commercial activity exception and the tortious acts or omissions exception.

    1. <u>Commercial Activity Exception</u>

Counts I to XI are premised on the commercial activity exception, which provides in relevant part: "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state else-

4

where and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). In other words, the jurisdictional bar is overcome only if "this lawsuit is (1) 'based . . . upon an act outside the territory of the United States'; (2) that was taken 'in connection with a commercial activity' of [Mexico] outside this country; and (3) that 'cause[d] a direct effect in the United States.'" *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611 (1992). "[B]ecause the Act provides that the commercial character of an act is to be determined by reference to its 'nature' rather than its 'purpose,' 28 U.S.C. § 1603(d), the question is not whether the foreign government is acting with a profit motive," but rather "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Id.* at 614.

Here, the commercial activity alleged to bring Defendants within the purview of this exception is having an agent or office, collecting copyright and royalty fees, contracting and collecting fees for publication or exhibition, and authenticating artwork. However, an action is "based upon" only "the 'particular conduct' that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015) (finding that a personal injury suit arising from a fall during train travel was not "based upon" the train ticket sale by the foreign state). Here, the gravamen of the suit is Defendants' alleged failure to authenticate the subject artworks.

Assuming *arguendo* that art authentication is "in connection with a commercial activity," the question is whether Defendants' failure here to engage in the authentication process caused a "direct effect" in the United States sufficient to trigger the exception. "A 'direct effect' under the FSIA is one that follows 'as an immediate consequence of the defendant's . . . activity.'" *Araya-Solorzano*, 562 F. App'x at 904 (quoting *Weltover*, 504 U.S. at 618). The claimed effect here is

5

the reduction of value of and inability to market and exhibit the subject works. Though no perfectly analogous case law resolves the matter, related circuit precedent offers guideposts. For instance, the Eleventh Circuit has held that "in the context of a breach-of-contract claim, U.S.-based injuries such as an inability to ship goods to the United States, lost profits from future sales, harm to reputation, and expenditures connected to the breach were too indirect and speculative to qualify as 'immediate consequences.'" *Id.* (quoting *Samco Glob. Arms, Inc. v. Arita*, 395 F.3d 1212, 1217 (11th Cir. 2005)). Further, the "'negative activity' of a foreign sovereign's failure to make a payment cannot overcome immunity under the FSIA." *Id.* (quoting *Guevara II*, 608 F.3d at 1310). Those precedents compel the conclusion that Defendants' "negative activity" here—the refusal to engage in the authentication process, allegedly impairing the value and marketability of the works—is insufficient to trigger the FSIA commercial activity exception requiring a "direct effect" in the United States.

Because the Court finds no basis to exercise jurisdiction under the FSIA's commercial activity exception, Counts I to XI are dismissed with prejudice.

2. Tortious Acts or Omissions Exception

Counts XII to XIX are premised on the FSIA's tortious acts or omissions exception, which provides that immunity shall not attach in a suit "in which money damages are sought against a foreign state for . . . damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5). However, this tort exception "shall not apply to . . . any claim based upon the exercise or performance or the failure to exercise or perform a *discretionary function* regardless of whether the discretion be abused, or . . . any claim arising out of malicious prosecution, abuse of process, li-

bel, slander, misrepresentation, deceit, or interference with contract rights." *Id.* (emphasis added).

Defendants argue that the art authentication here is an inherently discretionary act, indisputably triggering the discretionary exclusion. To determine whether a particular act falls under the discretionary function exclusion, courts ask "1) whether or not the conduct of the individuals employed by the government agency involved any permissible exercise of policy judgment, and 2) whether or not that judgment is of the kind that the discretionary function was designed to protect." *Panton v. Jamaica*, No. 90-cv-0212, 1993 WL 394775, at *2 (S.D. Fla. 1993) (citing *United States v. Gaubert*, 111 S. Ct. 1267, 1273 (1991)[3]). Because "the exception is designed to prevent 'judicial second guessing' of decisions 'grounded in social, economic, and political policy,'" the exception "protects only governmental actions and decisions based on considerations of public policy." *Swafford v. United States*, 839 F.3d 1365, 1370 (11th Cir. 2016) (quoting *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 537 (1988)). Although Defendants focus on the fact that art authentication itself involves opinion and judgment, the alleged wrong here is the *failure to undertake the process* of authenticating the subject works. Nevertheless, the Court concludes that the decision to undertake the process of authentication is also inherently discretionary and involves a permissible exercise of policy judgment. Surely the Mexican government is not duty bound to authenticate any and all works of art that private individuals request it to authenticate. And how the Mexican government uses its resources involves policy judgments that this Court will not second guess.

Because there is no basis to exercise jurisdiction under the tortious acts or omissions ex-

---

[3] Although *Gaubert* is a Federal Tort Claims Act ("FTCA") case, "[t]he language of the [FSIA's] discretionary function exclusion closely parallels the language of a similar exclusion in the [FTCA], so [courts] look to case law on the FTCA when interpreting the FSIA's discretionary function exclusion." *Doe v. Holy See*, 557 F.3d 1066, 1083 (9th Cir. 2009).

ception to the FSIA, Counts XII to XIX are likewise dismissed with prejudice.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Third Amended Complaint [ECF No. 28] is **GRANTED**;

2. all counts of the Third Amended Complaint are **DISMISSED WITH PREJUDICE**;

3. Plaintiff's Motion to Extend Certain Pretrial Deadlines to be Determined After the Ruling on the Motion to Dismiss [ECF No. 38] is **DENIED AS MOOT**; and

4. this action is **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20th day of June, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE